Mr. Rothfeld. Thank you, Mr. Chief Justice, and may it please the Court. In this case, we find ourselves in the happy situation of having to try to convince the Court that its prior decisions were correct. Just five years after the enactment of FELA, the Court declared that it was obvious that the statute contained a proximate cause requirement. The Court went on to repeat that conclusion over and over again. In almost two dozen decisions over the next 40 years. Our submission this morning is that the Court, when it made these statements, got it right. Kennedy. How did it happen that in FELA we have proximate cause light? It's just a different proximate cause than we see in other torts cases. How did that come about? Rothfeld. Well, we — our submission is that that is not correct, that that is not what FELA provides for at all. And in the Court's initial decisions, the ones that I referred to, it stated very clearly that the ordinary proximate cause rule applies. The proximate cause test that the Court stated in cases like Grady was the traditional proximate cause standard. Can you read the cases as indicating that more deference is given to juries in FELA cases than in other cases? Well, that's — is a separate question from the one we have here. I mean, we're talking here about the nature of the elements of the cause of action that have to be demonstrated by the plaintiff. And so the question of how much of that evidence there has to be to get to the jury is a separate question that's not presented here. Our submission, since you posed the question, is that there is no different standard. FELA was not intended to depart from the ordinary common law procedural approaches in that respect either. But on the question that's presented in this case. But juries usually find against railroads anyway, right? I wouldn't want to commit myself to answering that question affirmatively, Your Honor. I mean, the Court has said that FELA wasn't acted to address particular problems in the administration of the common law prior to 1908. It also said that there's a relaxed standard of causation. I think that's what Justice Kennedy is referring to, said proximate cause like. But we have said in more than one case that there is a relaxed standard of causation in FELA cases. Was that wrong? I think there are two ways to respond to that, Justice Ginsburg. First is that up until the Rogers decision, which is one of the ones which has created I think some confusion in this area, the Court was quite clear and unambiguous that proximate cause in FELA applied in the ordinary sense. As I say, in cases like the Brady case, the Court stated what proximate cause means.  It was clear that the injury followed in a natural, probable, foreseeable way from the wrongful conduct. And so that was the standard. The Rogers case, which was the source of some of the confusion in this area, in our view, as I think Justice Souter correctly demonstrated in his opinion in Sorrell, and as we explained at some length in our brief, Rogers, we think, did not address causation at all. The Rogers case was a situation in which there were a multiplicity of causes, and the question was what should the rule be when there are a number of entities that contribute to the accident. It had nothing to do with remoteness or directness of the cause, what we usually think about when we talk about proximate cause. In the years since Rogers was decided, when the Court largely got out of the business of deciding FELA cases on the facts, it has not had occasion in any case to address specifically what proximate cause meant in the FELA context. Scalia, we have used that language. You have not responded to the question where did this language that does appear in our cases about the relaxed standard, where does that come from? That comes from, we submit from sort of a loose description of what was going on in the Rogers case, which involved a multiplicity of causes rather than directness and remoteness of causes. And so the cases in which that language appears, which are the Crane case and the Crane case, do not involve causation at all. The question of causation was not presented to the Court in those cases. Ginsburg. It had nothing to do with the line of cases, I think, in the 40s in the FELA cases where the message of this Court seemed to be quite clear. FELA cases go to juries. There are a number of cases with rigorous dissents that seem to say just that. Well, that goes to the question that Justice Kennedy raised at the outset, which is how much evidence, whatever the standard of causation is, how much evidence must there be to go to the jury. And our presentation here is that FELA did not change the ordinary standard on that question. But that is not the question that's presented in this case. Ginsburg. Well, can you explain to me, I mean, here the judge charged in the words of the statute, and they are also the words used in the model Federal instruction, did Plaintiff's injury result in whole or part from the railroad negligence, you would say was Plaintiff's injury proximately caused, and as you no doubt know, Mr. Rothfield, that term, proximately caused, it just bewilders juries. So considering that these cases go to the jury, what do you say that the instruction that's now given, based on the words of the statute, did Plaintiff's injury result in whole or part from the railroad's negligence, what should the judge charge instead of that? Well, I think there are two parts to your question, Justice Ginsburg. One is what's wrong with the instruction that was given here, and the other is can juries understand proximate cause as a concept. On the first point, we have no objection to the instruction containing the language of the statute. The problem is that to be comprehensible and intelligibly applied by juries, it has to say more than that. Proximate cause that we submit is an element of the cause of action, and that has to be explained to a jury. It couldn't be the case in a Sherman Act case, for example, that a judge could simply charge the jury, you are to determine whether there has been an unreasonable restraint of trade. Now go to the jury room and answer that question. There is a lot more that has to go into that cause of action, including, as it happens, proximate cause. Mr. Rothfield, could you explain to me how it would have made a difference in this case, that instruction? It would have made a difference, I guess, in two respects. One is that the plaintiff's theory has never at any point been that there was proximate cause in this case. He did not contend that there was before the district court, and he does not contend in his brief to this Court that there was proximate cause made out. So. Ginsburg. Well, maybe explain the difference. I mean, you were answering my question when I asked how would you tell the jury. You said it's okay to say, did plaintiff's injury result in whole or part from the error of negligence, but the judge must say something more. So what is the something more? The something more is what this Court said in its Brady decision, in which it described the decision in Brady, which is cited and discussed in our opening brief in some detail. And Brady described what proximate cause means in the field of context. And it means, the Court said, that there must be a demonstration that the plaintiff's injury resulted from the wrongful conduct in a way that was natural, probable, and foreseeable. That was a traditional statement, is still today a traditional statement of proximate cause. Natural, probable, and foreseeable? And foreseeable. That language was taken in the Brady case directly from the Court's decision, 1876 decision, in the Kellogg decision, which we also cite in our brief, which stated Can you tell me, there is an article that suggests that juries don't actually understand what proximate cause means, and I think Justice Ginsburg can correct me. That what does that mean to a jury, natural, probable, and foreseeable? Are the three phrases different, and how much more detail do you have to get in to describe that difference in a comprehensible way? Well, that was the second part of Justice Ginsburg's question, and I got distracted and I'm happy to address it. I think most of the criticism of proximate cause as being confusion to the jury has actually been directed at the word proximate, that commentators and some courts have said that's a confusing word, it suggests immediacy, it suggests closeness in time, it sounds a lot like approximate, and so juries find it confusing. But there is one that, once it's spelled out, I mean, the fact is, juries have been applying proximate cause, which has been a fundamental, settled, universal, universally accepted part of common law of torts in the Netgen context in particular, has been settled for 150 years. Apparently, only FILA juries cannot understand it. All other juries find it okay. Well, I — it is our submission that FILA juries would have no more difficulty applying it than do juries under the Sherman Act or RICO or the securities laws, the other statutes that this Court has said include approximate cause requirement, or that juries apply every day in courts across the country in tort cases. Roberts I just don't — maybe this has already been asked, but I'm not sure from a juror's perspective that it makes terribly much difference, the exact formulation of this instruction. I think a juror who sees an employee is suing the railroad, and it turns out that what the railroad did had very little or nothing to do with what happened to the employee. They don't need an instruction about natural, foreseeable cause. They're just not going to give the awards, or they're going to give the awards even though the railroad didn't do anything that affected the employee. It's a nuance that I just don't think has any practical significance. Well, we have to assume that juries follow jury instructions. That's the fundamental premise of the system. And there is no reason to doubt that in the ordinary case in which the contents of approximate cause are explained to the jury in an intelligent — in a way that people can comprehend. Scalia client is entitled to have the jury disregard a proper instruction, right? That's what you're arguing. If the jury's disregard instructions on probable cause, on proximate cause, they probably do it in non-FELA cases, too. But you're entitled to have them disregard the correct instruction rather than an incorrect instruction, right? I will endorse that. My point is that I don't see much practical difference between what you argue is the correct instruction. Well, certainly in the term of the jury's discretion, I mean, law students, professors, and some judges have had trouble defining the concept of proximate cause for centuries. And I don't know why we expect the juror to be able to navigate through those nuances either. Well, the principle of proximate cause, the idea that there has to be some limitation  by the courts, by this Court, by commentators, by the restatement, the third restatement just published, clearly endorse — they quibble about the terminology, but they clearly endorse the absolute necessity of a proximate cause limitation on liability. Kennedy, over the last few decades, there's been an increasing emphasis on foreseeability as a component of proximate cause? There probably has been. I mean, I'll refer again to the third restatement, which has a very useful summary of the course of the law in this area. And the principle tests that are now being used by courts are foreseeability and directness, which are closely related. It's clearly if — as this Court stated just this month in the Stout case, stated a test of proximate cause in terms of whether they're— Ginsburg, could you give some examples of what causes would be proximate and what causes would not so qualify? Something that you said but-for is no good. So what would be a but-for cause, but not a proximate cause? A but-for cause in this context would be there's a defective brake on the locomotive and it comes to a sudden stop. If the conductor standing in the locomotive when the train stops is thrown to the floor and injured, clearly that is proximate cause. It is an injury that is related to the risk that made the conduct actionable in the first place. The reason that having defective brakes is negligent and gives rise to a cause of action is because it can cause an accident that will cause people to fall, cause the train to hit something, will cause derailment. That's why it is negligent. And if the kind of the injury that follows from the accident is related to that risk, that clearly is proximate cause. The kind which is not would be train stops because of the defective brake, no one is injured. Conductor gets off the train to walk along and see what's going on, trips and turns his leg or is bitten by a snake. Kagan. Kagan. Mr. Ruckelshaus. Are there any cases like that in the FILA world? You know, I take it that this basic instruction that was given in this case is the instruction that's given in most cases. If you look across the range of cases, do you find jurors awarding damages in the kind of situation that you're talking about? In other words, is this a real world problem? They did in precisely the case I just described, the case called Richards from the Sixth Circuit which is cited in the amicus brief submitted by the Association of American Railroads. The train stops because of a defective brake, conductor gets off, walks along, turns his ankle, ensues. Clearly, the risk of someone, you know, getting off the train and having a fortuitous injury is not the kind of risk that gave rise to the negligence. I mean, it's negligent to have a defective brake, but not because there's a bystander who might be bitten by a snake or turn his ankle. Breyer. Is there a case like that? As I say, the Richards case. I mean, somebody might think that having to go off and patrol a thing in a rough area is something that happens with a sudden stop. You run a risk of turning your leg. I agree with you about the snake. Is there any case about the snake? I can't cite you a snake case directly, but there is. Okay. So the furthest, the furthest, the furthest that you go is the case of sudden stop in the wilderness, gets off, rough area, and twists his ankle. Or I'll cite you one. I don't know. Is that proximate cause or not? Well, I'll give you two answers to that, Your Honor. First of all, there are other cases. Another case, for example, cited in the amicus brief that I referred to is the Schlumberg case from Georgia in which there is a defective coupling device. It's lying on the ground. If it had fallen off the train because it was defective and fallen on someone's foot, clearly that's proximate cause. But it's on the ground. The employee comes along, picks it up, throws off his back, throws out his back and suits. That is not the kind of injury that one would foresee comes from having defective couplers. And you want, what instruction would you give that would tell the jury to allow damages in one of those, the first of the coupling cases, but not in the second? The instruction we ask for is the one this Court gave, said should be given in the Brady case, natural, foreseeable, and probable. It is not. The juror is going to sit there and say one of those is natural, foreseeable, and probable, but the other isn't. I would say that it is. I don't know what natural means. So it's not a supernatural situation? Well, I'm just quoting the Court's language to you, Your Honor. But certainly foreseeable and probable. One would say that it's not foreseeable that if you drop a coupling where it's not supposed to be, somebody will come along and try to pick it up and move it? Well, but it's not foreseeable in the sense that it is unrelated to the risk that gave rise to the cause of action in the first place. I mean, it's foreseeable in the sense that anything is foreseeable. If I give the classic example, I drive you to New York, from Washington to New York, and I drive too fast, exceeding the speed limit, that's negligent. It's negligent because I run the risk, if I drive too fast, of hitting somebody, of hitting another car, of driving off the road. And so if I do that and you're injured as I drive you to New York, you can sue me. But that doesn't happen. I get to New York safely, you get out of the car, and as soon as you get out, you are struck by lightning. It's a but-for cause of your being struck by lightning that I drove too fast. You wouldn't have been there when the lightning struck. It could have been bitten by a snake. But there has been no such case, Your Honor. Or more likely, you could have been hit by a car driving across Fifth Avenue too fast. Ms. Rotherford, your instruction actually used the term probable cause, approximate cause. Are you saying now that that's not necessary, that as long as you say reasonable and foreseeable, you would be satisfied? Well, I think that it should include the term proximate simply because that has traditionally been the requirement. That's what this Court has said in cases like Brady. That's what the Court has said in cases applying other approximate cause, other elements of proximate causation in other circumstances. But it is the concept. I mean, as I said, proximate, proximate is a confusing word. That has been recognized sort of across the board. So it has to be spelled out and unpacked. And I think that's the point. So why use it at all? If you think that reasonable or foreseeable are less confusing words, why shouldn't we just tell the jury to use those words instead? I don't think that it is essential that it use the word proximate if it spells out what is meant by proximate in essence. And spelling out is natural, probable, and foreseeable. Again, that is the term that this Court used in Brady. And that is closely related. Although, your proposed instruction didn't use the word foreseeable. It did not use the word foreseeable. It used natural and probable. But we endorse, again, the test that this Court has stated in the FILA context very clearly in the Brady case. There are, as has been noted in some of the questioning, there has been discussion between courts and commentators over the years about what the best way is to define proximate cause and explain it to the jury. I mean, in terms of the question posed by the Chief Justice, does it actually make any difference? I think not only do we have to assume that it makes a difference because juries are presumed to follow their instructions, but the kind of instruction that was given here was essentially a but-for instruction, that if you find that in any respect the injuries essentially would not have occurred but for the negligence of the railroad. Alito, could you explain how it might have made a difference in this particular case based on the facts of the case? As I understand it, Mr. McBride's theory was that as a result of having to use the independent brake extensively over a long period of time with this wide body cab, his hand got tired and it fell and it hit the independent brake. Is that the theory? Well, that's his explanation of the accident. The theory of negligence, as I understand it, as it was presented to the jury by his expert, was that the configuration of the train that he was driving was unsafe because it could lead to derailments, it could lead to braking of the couplers. As explained by his expert, the theory was not that there was something unsafe about the arrangement of the braking system. And so I think that the way in which a proximate cause instruction properly given here could have made a difference is that the jury could have found, well, yes, it was negligent to have these five locomotives arranged the way that they were, but that had nothing to do except in a but-for sense with the fact that Mr. McBride's hand was injured. So the jury could have made that determination and so it could have made a difference. Now, I mean, the fact is there was no proximate cause argument made below because the instruction that was given by the district court excluded it. And so, as I said before, the theory of the case advanced by Mr. McBride below simply didn't take account of proximate cause. Now, if we prevail here and the case goes back, he will be free to argue under a proper instruction that there was proximate cause, that somehow the configuration of the train affected his handling of the braking. Sotomayore, you're really suggesting that the defense attorney here wouldn't have argued the concept of proximate cause in saying the negligence had nothing to do with him just deciding to hit the brake? It's far-fetched, don't you think, that because the judge refused to give a proximate cause charge that the idea of it wasn't argued to the jury? What we did didn't cause this. Well, there is no question that what the railroad did caused it in the but-for sense. Mr. McBride would not have been in the cab operating the brake system had it not been for the configuration of the locomotives. And so if we assume that the configuration of the locomotives was negligent, then but-for the negligence of the railroad, this would not have occurred. And that, in fact, is the term in which the case was argued to the jury by Mr. McBride's lawyer, who said in so many words, but-for the negligence of the railroad, this would not have occurred. Scalia So the question is, what was your argument? What was your side's argument? Did you argue in effect proximate cause? Our side argued that there was no negligence at all, that the configuration of the railroad was perfectly proper, and that there was a contributory negligence component to what was going on here, and in fact the jury found that Mr. McBride was contributory to the negligence in part, and that was part of the defense presentation, too. But to take a step back to first principles, on the assumption that proximate cause, that there is a difference between instructing the jury on proximate cause and not, because the Court, it has been a part of tort law, you know, for time immemorial, on the assumption that it does make a difference. And it has been an important part of tort law, because it has been sort of universally recognized by courts, by academics, by the restatement, that there has to be some limitation on liability beyond but-for causation. If there is not, there is the danger of sort of infinite liability, of limitless liability, and particularly a fortuitous liability, because there is no way that the defendant in a situation like this can anticipate that it's going to be held liable for this kind of injury. And so proximate cause has been regarded as an essential component of tort law. And that being so, FILA creates a Federal cause of action for negligence. It creates a Federal tort. It is a fundamental principle of statutory interpretation. This Court has applied many times, most recently just this month in the Stout case, that when Congress creates a Federal tort, it means to adopt the general background of tort law. And Congress doesn't. Ginsburg. Are there any negligence-type statutes? I mean, this one, I mean, it's odd to say that the judge erred in reading to the jury the words of the statute, did plaintiff's injury result in whole or in part from railroad negligence. Are there Federal statutes, negligence statutes, that use the word proximate? There are Federal statutes that use the word proximate. I don't know that there are any negligence statutes. So far as I understand from our review of the law, at the time that Congress enacted FILA in 1908, there were no such statutes that made use of the term proximate. And the presumption then, as now, is that when Congress creates what amounts to a Federal tort, the assumption is that it intends to adopt the background of tort law. That was true in the Sherman Act, it was true in RICO, it was true in the securities laws, it was true just earlier this month in the Stout case, a statute which does not use the term proximate. But you said your defense at trial was not about causation, it was no negligence, right? Well, that's right, because given the instruction that the jury received, which does not, did not include a proximate cause requirement, and given that if one assumes that there was negligence, there is no doubt that the injury here was the but-for product of that negligence, there sort of was no room for negligence to be argued to the jury on the defense side, I mean, for proximate, for causation to be argued on the defense side. Well, assume you could talk to the jury and the jury says to you, we found negligence, so we don't want to hear about that, and we found but-for causation, we don't want to hear about that. Now, explain to us why there isn't proximate cause here. What more, what, what would you say? In this case, we would say the negligence that is being presented to you and that you have presumably found is that the configuration of these locomotives was dangerous because it could lead to derailment, it could lead to break-lean of the couplers between the cars. That is the negligence. And proximate cause, properly understood, means that the injury on which the plaintiff is suing has to follow in a probable, natural, foreseeable way from that, that negligence. But wasn't the theory different, Mr. Rothfeld? Wasn't the theory that the configuration of the train made the breaking and the switching much more difficult for the person in this position? Well, if I may, I'll answer that question and then sit down. That, as I say, was not the theory that was presented by the plaintiff's expert. To the extent that that is a viable theory, it could be presented on remand. The argument can be made. I think it's a difficult argument, but it was not presented to the jury here because there was no proximate cause in structure. So there was no opportunity for the question to be vetted. And with that, I'll be at your end. Roberts. Mr. Frederick. Thank you, Mr. Chief Justice, and may it please the Court. This case is a case that presents a nonexistent problem and a solution that is in search of a nonexistent problem, because there are no real reported cases where there have been problems arising under the Rogers instructions that have become the model instructions under the Federal rules for over 50 years. And if I could just begin, Justice Kennedy, with your question, which opened this up. Proximate cause serves two principal functions. One is to limit the scope of the persons to whom the tortfeasor owes a duty, and the second is to limit the kinds of injuries that that person would be liable for. The innovation in FELA that is so important to understand about why the relaxed causation standard became the accepted standard under FELA was that FELA by its plain terms did away with the first concept of proximate cause, because it limited the duty to the employee by the employer. There is no one outside of that relationship that can bring an action under FELA. And the second thing that it did was it put into what is now section 51 that if the negligence results in, quote, in whole or in part from the negligence of the railroad, that is enough for injury. At common law, the proximate cause standard required that the railroad's negligence be the sole cause. So the innovation that created the relaxation and the causation standard was the inclusion of these words in part. And so over time, the other side says what that meant, and the language of our cases seems to support that. In whole or in part simply eliminated the common law doctrine of contributory negligence, whereby if the plaintiff also had been negligent, the plaintiff could not recover. And FELA uses a comparative negligence standard. And this Court has rejected that kind of approach almost from the beginning of the statute. In Campbell in 1916, the Court asked whether FELA has completely eliminated the idea of proximate cause. The Court has eliminated and the plain language precludes the sole cause, immediate cause, direct cause, last cause, substantial fact. Scalia, in whole or in part, apply to the elimination of contributory negligence. Isn't that an adequate explanation for the language? It's not one that's consistent with the Court's cases. And let me point you back to the day Rogers was decided. If we accept for purposes of argument, and I'm only accepting it for these purposes, that Rogers was only about multiple causes, on the very same day it decided two other cases that arguably were only about single causes. It decided a case under the Jones Act, the Ferguson case, and it decided another case under FELA, the Webb case. In both of those cases, there were no multiple causes, there was no contributory negligence. But what the Court said was that on today we are announcing this standard, we apply that standard to overturn directed verdicts where juries had come to the conclusion that the railroad's negligence had played a part, even a slight one, in producing the injury sustained by the worker. Kennedy, do you think that the phrase in the statute, in whole or in part, allows juries to impose liability based on but-for causation? No. The reason why not? As this Court put a gloss on that language in Rogers, it construed those words to mean that the railroad's negligence has to be found to have played a role, however slight, in producing the injury. Thus, in Mr. Roberts' case, there was no negligence in but-for causation. Scalia, that's what but-for cause means. Tell me about the snake. Is the snake covered? No. Why not? Because the railroad's negligence there. I mean, once you abandon a proximate cause requirement, however you want to define that, I don't see why the snake isn't covered, or the lightning on 42nd Street. Because there the railroad's negligence played no part in producing the injury. It's the producing aspect that provides a little bit more of a positive element. Sure, it did. The train wouldn't have stopped, the conductor wouldn't have gotten off, he wouldn't have been bitten by the snake. If the car had not traveled to New York over the speed limit, the passenger wouldn't have been on 42nd Street when the lightning struck. I mean, how can you say it didn't play a part? Of course it played a part. It was certainly an element of the existence of the condition. But what the Court's case is, Justice Scalia, after Rogers have done, and I think this is an important part of the history, is that there are a couple of outlier cases, to be sure. Courts have corrected them all by saying that the judge, that the jury could not have reasonably found, based on common experience, that the snake bite or what have you was approximately related to the plate of bark. Breyer, as I read the statute, it insists, as interpreted in Rogers, that the negligence has to play a part in producing. And in the snake case, the negligence doesn't matter. It's simply the timing, et cetera.  Now, I don't know, and I suspect from the answers I've gotten so far, there's never been a court that read it differently. That's correct. Is that correct? Yes. The negligence didn't play a part? Yes. But for the negligence, the train wouldn't have stopped. How can you say the negligence didn't play a part? Had the train not stopped, he wouldn't have been walking along and been bitten by the snake. Justice Scalia. I mean, do words mean anything? How can you possibly say the negligence didn't play a part? It obviously did. It seems to me you're arguing for not the nonexistence of proximate cause. Nobody in his right mind could argue for the nonexistence of proximate cause. You are arguing for some different definition of proximate cause. And I'd like to know what that new definition is as opposed to the definition that Mr. Rothfeld proposed. Well, let me start with this by saying that the Court in the language of the statute have already eliminated six possibilities for proximate cause. And the question now is whether there's something additive to the words that Mr. Rothfeld now proposes for the first time, because this was not language that they proposed in their profer jury instruction, which can be found in the red brief at page 11. There they followed the Illinois proposed instruction, which says natural or probable sequence. That language does not appear in Brady. In Brady, a 1943 case from this Court, the words are used, natural and probable consequence, a consequence, of course, being a result, a sequence being an order of events. Now, their instruction rests on the word probable, which, of course, in common understanding, and most juries would commonly understand, probable means more likely than not, which is directly in contention with the statutory words, in part, and directly contrary to the way courts have universally understood this language. Breyer, I don't know if they've said this, but, I mean, as I read it, I thought the reason the negligence doesn't play a part is the act which was negligent played a part, of course, it was but for, but the fact that it is negligent is totally irrelevant, because it's not within the risk in any sense whatsoever. Now, you know the area. Don't disagree with me, because I'm saying it is that roughly the. That is correct, Justice Breyer. And in the cases, and there really are only a few cases where you can find these kinds of outlier facts and these kinds of, you know, out-there situations, and one of the reasons is because FELA is only a compensatory damages statute. It only addresses the actual injury and the compensation for the worker. There are no punitive damages. There are no attorney's fees. There are no trouble damages. Kennedy, the jury room and a juror says this wouldn't have happened but for the wide locomotive, therefore, there should be liability. What and assume the jury has all of the Federal reports in there and the judge lets them read. What is there for another juror to say that this is wrong? The negligence theory here, Justice Kennedy, if I could go back to that, was not stated in a way that we would subscribe to by Mr. Rothfeld. Our theory of negligence at trial was twofold. One was that these widebody locomotives were not appropriate for the switching exercise that the trainmen were doing on that day. And in fact, the supervising engineer said this was the only time that he was aware in his long experience where these widebody locomotives were used for this specific purpose, which required a lot of braking activity. The second theory of negligence was that Mr. McBride was put to this purpose without proper training. He complained on the day he was uncomfortable and he didn't know whether he could operate that locomotive, and the jury was entitled reasonably to infer that that poor training was a negligence. Sotomayor How did any of those things cause his injury? Because you used the formulation negligence played a part in the injury. So how did those things play a part? Frederickson Let's start with his poor training. There was testimony that a person who was more skilled in the art of dealing with a widebody locomotive would be able to manipulate the independent brake with the automatic brake in a way that would not cause the repetitive stress injury that Mr. McBride suffered. And there was further testimony that using a widebody locomotive, which is more difficult to manipulate for the switching operations, and here we're talking about moving in and off main tracks to couple trains, train cars, so that they can be used for a longer destination, that that kind of equipment was not suited for the purpose. Mr. McBride's testimony was when he had used the widebody locomotive, he had done so on long trips over long distances that didn't require the same kind of ready manipulative braking of the independent brake. So the jury was entitled to that. Scalia You don't assert that that's a foreseeable consequence of the negligence of using a widebody train? Frederickson It's foreseeable if the railroad is using a piece of equipment without training the person to use it for a purpose that it's not ordinary. Scalia You say it doesn't have to be foreseeable? Frederickson They didn't ask for foreseeability, Justice Scalia. Scalia Oh, so you concede that it ought to be foreseeable? Frederickson What I would say, this Court's case is not foreseeable. Scalia I'm trying to see what your case is, because I cannot believe you don't believe in proximate cause. I just think you're giving a different definition of it. And I'm trying to figure out what your definition of it is. Frederickson My definition, what I think the Court did in Rogers, was to try to end the debate over how confusing the word proximate cause is in these kinds of cases by offering simple and direct instructions that juries could understand and apply. And that has been the case over the last 50 years. Scalia Do it. I'm still waiting to hear your instruction, which is supposedly something other than but-for, or is it just but-for? Frederickson I would take the words of Rogers. I think the jury here was properly instructed. Scalia What are the words? Give me the words. Frederickson The words are on page 10 of the red brief, Justice Scalia, and that it follows the model form instruction that's used in all the Federal courts. Defendant caused or contributed to plaintiff's injury if defendant's negligence played a part, no matter how small, in bringing about the injury. The mere fact that an injury occurred does not necessarily mean that the injury was caused by negligence. Scalia You don't think that's but-for? Frederickson Whether you think it's but-for or not, I think, is beside the point. Scalia I don't care whether I think. We've got words here. What do those words mean? Frederickson Those words mean that but-for plus a relaxed form of legal cause associating the negligence in playing a part in producing the injury. That's how Rogers understood it. Scalia Negligence is a given. Negligence is not what I'm asking about. I'm asking about causality. And what you have just read is but-for cause. Frederickson Well, I would disagree with that, Justice Scalia, and I think that the Rogers Court disagreed with that, too, because after Rogers, this Court upheld in Inman a case on a directed verdict where it concluded after the Rogers instructions had been used that, nonetheless, the negligence of the railroad had not played a part. That's a case involving a drunk driver who hit a flagman at the site of where the flagman was operating. Sotomayor Can I go back a second and perhaps follow up Justice Scalia's question in a slightly different way? Do you believe a railroad can be held liable for a harm it could not reasonably foresee? Frederickson Yes. Sotomayor All right. Now perhaps we can get to why. Under what formulation, if it didn't know a harm was going to happen or could happen, it could not reasonably foresee it? Frederickson Yes. I think that the concept of foreseeability is one that has alternated in and out of this Court's cases. But let's take the case of Gallick in 1963, where a fetid pool with vermin and rats were allowed to live by the railroad's negligence, and it was believed that an insect was growing and insect bodies were growing in that fetid pool. And as a result of that insect bite, the injured worker's legs had to be amputated by the effect of this insect bite. Now, many people would argue, in fact, the lower court had concluded that it was not reasonably foreseeable that the railroad's negligence in allowing that stagnant pool to exist would nonetheless lead to the injury sustained by the worker. Sotomayor But it might not be reasonably foreseeable that an amputation would occur, but it was reasonably foreseeable that some injury to people would happen as a result of these infected insect bites, no? That's what the Court ultimately said. That's correct. But what the Court had also done was to rely on earlier cases in which it's saying these concepts really are relaxed because the purpose of FELA is to provide a substitute, if you will, for workers' compensation, where if you can establish negligence on the part of the railroad and it causes in part the injury, the railroad will be liable for that. And that's why this – these concepts of proximate cause really are getting at a different problem, which is that when these statutes are enacted, you're trying to guard the defendant's liability against the entire world, and that's why it makes sense to impose some kind of restriction for foreseeability or for directness, because otherwise anybody could be liable to anybody else. Here, that problem is removed because the railroad is the only – can only be sued under FELA by the employee, and only if its negligence plays a role in producing that injury. If I could go back to the words that Mr. Roffel's trial counsel had proposed, the probable sequence word is now not even used anymore in Illinois. So it would be very odd to think that you would reverse an instruction here where the proffered instruction by the railroad doesn't even state what the proximate cause instruction in the model language. Now, the model language under Illinois calls for the natural and ordinary course of events. That's how proximate cause is now done under the Illinois proposed instructions. And it's hard to know how that language, Mr. Chief Justice, takes us any different from the common instruction that all juries are given to use their common experience and their common sense in evaluating the evidence. If what proximate cause now means under these types of standards is the ordinary course of events, all we're doing is asking juries to apply their common sense without introducing the word proximate cause, which has been demonstrated to confuse juries, because most of the – you know, many think that proximate means something like estimate or proximate. Scalia. The other side doesn't insist on that. The other side will give you that one. And we're delighted with that concession, Your Honor. Ginsburg. Mr. Frederick, suppose a juror says, we would send a note to the judge and said, we would like to have an explanation of what does it mean that the injury results in whole or part from the railroad's negligence. What would the judge respond? Frederick, I'm not entirely sure how a trial judge would take a request for further clarification of this word's – this Court's words that clarified the resulting in whole or in part from. I'm not aware of any cases where anyone challenged the use of the Rogers language on the ground that it wasn't simple and direct and therefore couldn't be understood by the jury. Scalia. Well, this jury found it so. What would you tell the jury? I beg your pardon. This jury found it unclear and asks you, and then what would you say? I think, and I've never served as a trial judge, but I think my direction would be to go back and try again based on the words that are there, because the whole idea behind these words was to try to end the debate between this Court and many State courts that simply didn't grasp that FELA was intended to provide a remedial statute with a causation element that was a weaker causation element than in normal negligence cases. And so this Court was taking dozens of cases under FELA between the 1930s and the 1950s in which the Court was looking at directed verdicts by State supreme courts that were overturning jury verdicts. And the whole idea behind making this the language of what constitutes a jury case was to remove the appellate review process from a lot of these things and to leave these questions up to the common sense of the jury. But what if the jury says, well, does it mean that but for the negligence, the injury would not have occurred? Then what would the trial judge say? If the jury asked a question, I think the judge would write back and say, no, that's not correct. The words, please focus on the words, the negligence playing a part, however small, in producing the injury. I mean, I'm not aware that the juries get to this but for versus what is a relaxed and what constitutes a jury. Scaliaro, do you think that eliminates but-for cause, to tell them the negligence plays a part, no matter how small in the injury? Do you think that eliminates but-for rather than invites it? No, Justice Scalia. Our position is that it is but-for plus a relaxed form of legal cause that's been well recognized in the cases and hasn't produced a problem. Surely, the burden is on the railroad to come up. I would have thought that if they wanted to overturn pattern instructions that have been used in nearly a half a million cases since Rogers was handed down, that they would have more than a case that they cite from one of their amici. I mean, they don't even cite the Richards case in their main briefs. And so surely, you know, we're here to debate these hypotheticals, I would suppose, but they don't have any relation to the real world. And suppose the jury asks, is it sufficient, is it necessary for the injury to be foreseeable? What does the trial judge say then? I think the trial judge says, no, it is not necessary for it to be foreseeable in a direct if the negligence plays a part, however small, in producing the injury. And that's why in cases like the Ferguson case, which was decided the same day as Rogers, I mean, that's a very out-there set of facts, where the ship steward and remember, what you decide here also applies in the Jones Act for seaworkers as well. But in that case, the Court said it was a jury question whether the failure to provide an appropriate implement to scoop hardened ice cream from the freezer on the ship was foreseeable, whether or not the ship steward in serving the ice cream would reach for a butcher knife to try to chip away and lead to the severing of two of his fingers. I mean, we're talking about a dangerous situation, Justice Alito. At the time that FELA was enacted, in a year prior to that, some 12,000 people died and there were hundreds of thousands of injuries. And the idea behind the statute was to provide a broad remedy so that rail workers could be compensated, not get extra damages like punitive damages, but just compensated for their injuries. And so the result is that railmen know they're going to have to go before juries exercising their common sense, and the juries have in many, many cases ruled in favor of the railroads, and that system ought to be allowed to continue. If I could go back to one last point, and that is the idea of statutory stare decisis. We believe that because Rogers construed the in whole or in part language, it's entitled to statutory stare decisis where jury instructions have used that language. And at some level, this case is not too far from the Hilton case, which was decided in the early 90s, except the difference is, in Hilton, the Court had dealt with a case from the early 1960s called Pardon, and that case had had many of the underpinnings of the question there that had been discredited or undercut by subsequent decisions. Here, there are no cases since Rogers that suggest doubt on the general validity of the Rogers rule. You have the cases that were decided in the immediate proximity of Rogers. You have Gallick in 1963. Ginsburg. And you have three justices of this Court that says Rogers is irrelevant because it had to do only with multiple cause. And my answer to that, Justice Ginsburg, is that after Rogers, the Court applied the Rogers language to single cause cases. We have Webb, we have Ferguson, we have Kernan, we have Gallick, we have the statement in Crane that comparing the actions of the non-employee, that the explanation for why the non-employee has to go to common law is because there are these special features of FELA, one of which is no common law approximate cause and the elimination of contributory negligence and assumption of the risk. And then subsequently, when the Court in Ayers and then in Gottschall says very clearly these are ways that FELA has departed from the common law and from other statutes, in Gottschall the Court was very clear that it is relaxed causation and that this is one of the departures from normal common law standards. It would seem odd to hold now that all of a sudden we are going to talk about common law standards for causation where the Court over a series of decisions over the last hundred years has knocked out six of the prevailing versions of approximate cause that were then in vogue. That would be a very odd way to rule. Sotomayor, Mr. Frederick, go back again and tell me what a judge would say to a jury so he or she doesn't say what for is not, not using those words. Tell me in simple, plain language how a judge differentiates to a jury the difference between but for and this causation. What would a judge say? Frederick, I would start with the language in Rogers, and then I would say that negligence played a part in the injury. Sotomayor, in producing injury. Frederick, that's correct. And that part of that played a part, you know, rests on the common sense of whether or not a jury thinks that a particularly improbable set of events is something that would be within the common experience of someone to view as. Scalia It sounds like foreseeability you're talking. Frederick, it's a relaxed form of foreseeability in much the same way that the Court said. Scalia I thought you said no foreseeability. Frederick, what I said was that this Court's cases go back and forth on the idea of foreseeability and whether or not it's necessary. Scalia Do you want to go back or forth? Which do you want? Frederick, I think it's foreseeable here in this case that using the wrong equipment with the wrong training would produce an injury like the one that my client suffered. And so I would stand on that basis, and I would further stand on the ground that this Court. Kennedy Well, at least that, it seems to me, is a jury question. Frederick, that's right, Justice Kennedy. And the jury here applied the statute the way it was intended. It found fault with my client, and it found fault with the railroad, and it apportioned damages accordingly. Kennedy But it was not instructed on foreseeability. Frederick, and they didn't ask for a foreseeability instruction. So, you know, reversing when they haven't asked for the correct statement of the law is not something this Court ordinarily does. Wasn't this true?  They did ask for approximate cause. They defined approximate cause by saying natural or probable sequence, Justice Ginsburg. That's how approximate cause was defined in their words, and that, in the way they defined it, didn't include the word foreseeability. Scalia That sounds like a good definition of foreseeable, doesn't it? It's natural and probable. Frederick, could anything possibly be natural and probable and not foreseeable? Frederick, Justice Scalia, the word probable is more likely than not, which is a stronger standard. It's in tension with the words in part in the statute. Result in part is not something that is more likely than not. For that reason, we believe the Court should adhere to the Rogers approach. It's worked. It's allowed juries to exercise their common sense without being confused by these elusive approximate cause formulations. The other side has failed to identify a problem, and there's not the slightest reason to think that any alternative formulation would work any better. Alito Could I just ask you this factual question? Was it Mr. McBride's theory that his injury resulted from the repetitive use of the independent break, or was it that the as a result of the repetitive use, his hand fell down and he and it hit the independent break and that was the cause of the injury? Frederick, Justice Scalia, the word probable is more likely than not, which is a stronger standard. I think it's both theories were presented, and they were both based on the improper equipment that he was asked to use and his improper training he had been given, which are classic jury questions concerning negligence and causation. Thank you. Roberts Thank you, counsel. Mr. Rothfeld, you have 4 minutes. Rothfeld Thank you, Your Honor. Just a few quick points. First, although my friend, Mr. Frederick, has struggled valiantly, I think that he is unable to explain how his test is any different from a but-for causation. Breyer But eggs shell skull. Rothfeld That's a different kind of problem. Breyer It's not foreseeable. Rothfeld It has been the rule of common law, sort of from time immemorial. Breyer You're just saying it's all foreseeable, not foreseeable. Rothfeld No. The question is whether or not the kind of the risk of it, that there would be an injury, follows from the nature of the misconduct that gives rise to liability in the first place. And it's a common law that's always recognized that if you're risking a particular kind of injury, that someone is going to be hit, you take your victim as you find them. And that is put in a different basket of doctrine altogether. So first, again, there is no alternative to proximate cause but-for cause. That's been universally recognized as an unacceptable basis for liability. Second, if I can return to our snake just for a moment, it has been recognized that the nature of the protection that's provided by the tort law is related to the risk of injury that gives rise to liability in the first place. If the risk of injury is that a defective brake is going to lead to a derailment or an accident, injury that follows from that risk is compensable. Injury that does not, like walking along and turning your leg or being bitten by a snake, is in a different category. It's not predictable or foreseeable or natural in that sense. Sotomayor Why not if you know that there are snakes along this route, just like there is infected vermin or insects or something else? I'm- Rothfeld Well, the question would be one for the jury if it's properly instructed. And, in fact, in the Galla case, as I think, Justice Sotomayor, you recognize, the Court said that that injury was foreseeable. I mean, the jury, the issue can be posed to the jury. The jury can determine whether it is a natural problem. Sotomayor So it's not that it's a matter of law. Rothfeld No, that's right. That's right. Well, there will- Sotomayor That as a matter of law, there was, there could be no proximate cause. You're arguing that a jury should determine whether or not they could anticipate somebody slipping on a slope. Rothfeld That's generally right. I mean, there will be circumstances, as the restatement says, in which it is so clear that it is not a probable, natural, foreseeable consequence of the wrongful conduct that it should not go to the jury. And- Alito Isn't Mr. Frederick right in saying that asking whether something is probable is very different from asking whether it's foreseeable? Rothfeld Clearly, they are closely related. I mean, the Court in Brady stated that test as natural, probable, foreseeable. If it's natural and probable, it is likely to be foreseeable.  Alito Well, if it's probable, it's foreseeable. But it can be foreseeable even though it's not probable. Rothfeld Well, but I think what probable means in this context is that it has to be foreseeable, not simply in the theoretical sense. I can foresee if I drive you too fast in New York, maybe there will be a lightning strike. I mean, I can imagine that. But it has to have passed a certain threshold of probability before it's foreseeable. Scalia If that's true, that everything that's natural and probable is foreseeable, but not everything that's foreseeable is natural and probable, you were requesting a jury instruction that didn't go as far to help you as was possible, but you were still requesting a jury instruction that was on the road. Rothfeld But that's the only question here now before this Court is whether we are entitled to a jury instruction that states properly the nature of the proximate cause test. And if the case goes back under that standard, then the arguments that have been presented to the jury, but as you say, Justice Scalia, that's right. To the extent that there is anything wrong with the instruction we provided. Scalia Would this case go to the jury? Rothfeld I think it would be open to argue that it's so clear that there was no proximate cause that it shouldn't, but that's a question to be posed on remand. Kagan I'm sorry, Mr. Rothfeld. I didn't understand what you just said, because the requested jury instruction that you gave was any cause which in natural or probable sequence produced the injury. Is that right? Rothfeld That was the requested instruction. Kagan So that's essentially saying that the jury has to say it's 51 percent likely to produce the injury. Isn't that right? Rothfeld I — it was not put in those terms. I would not think the jury has to say that. Kagan Well, it says natural or probable, and probable means more likely than not, which is 51 percent. Rothfeld Again, it was not unpacked in those terms. And I would say it does not have to be demonstrated. The answer is no, the jury doesn't define that it is necessarily going to be the outcome. But it has to find that there is some substantial probability that it will be the outcome before liability can attach. That would be our submission. Roberts Thank you, counsel. The case is submitted. Roberts Thank you, Your Honor.